06 CV 4821

Judge McMahon

RAYMOND NARDO, Esq.
Attorney for Plaintiff
129 Third Street
Mineola, NY 11501
(516)248-2121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
:
ROBERT MARCHIONNI,                        :
:
                    Plaintiff,            :    **COMPLAINT**
:
          -against-                       :
:
PREMIUM BUICK PONTIAC GMC LTD.,           :
PREMIUM CADILLAC, LTD.,                   :
PREMIUM NISSAN, LTD.,                     :
:
                    Defendants.           :
:
------------------------------------------X

FILED 2006 JUN 22 AM 9:19 U.S. DISTRICT COURT S.D. OF N.Y.

### JURISDICTION AND VENUE

1.  This action arises under the Americans with Disabilities Act, 42 U.S.C. Section 12111 et seq. and the Family Medical Leave Act, 29 U.S.C. Section 2601, et seq. This Court has jurisdiction under 28 U.S.C. Section 1331, 28 U.S.C. Section 1343(4), 29 U.S.C. Section 216 (b) and 29 U.S.C. Section 626(c)(1). Additionally, this Court has original federal jurisdiction pursuant to 36 U.S.C. Section 300105.

2.  Venue is proper in the Southern District of New York according to 28 U.S.C. 1391 because the defendant corporations conduct business there, the events occurred there, and plaintiff resides there.

### THE PARTIES

3.  Plaintiff, Robert Marchionni, is a resident of Westchester County and the Southern District of New York.

4.  Defendant PREMIUM BUICK PONTIAC GMC LTD. ("BUICK") is a corporation duly organized under the laws of the State of New York with its principal place of business located at 77 Main Street, New Rochelle, New York 10801.

5.  Defendant PREMIUM CADILLAC, LTD. ("CADILLAC") is a corporation duly organized under the laws of the State of New

LAW OFFICE OF
RAYMOND NARDO

York with its principal place of business located at 77 Main Street, New Rochelle, New York 10801.

    6.   Defendant PREMIUM NISSAN, LTD. ("NISSAN") is a corporation duly organized under the laws of the State of New York with its principal place of business located at 77 Main Street, New Rochelle, New York 10801.

    7.   Defendant BUICK employs 15 or more employees, engages in an industry affecting interest commerce, and is an "employer" under the ADA.

    8.   Defendant CADILLAC employs 15 or more employees, engages in an industry affecting interest commerce, and is an "employer" under the ADA.

    9.   Defendant NISSAN employs 15 or more employees, engages in an industry affecting interest commerce, and is an "employer" under the ADA.

    10.  Defendant BUICK employs between 15 and 100 employees, engages in an industry affecting interest commerce, and is an "employer" under the ADA.

    11.  Defendant CADILLAC employs between 15 and 100 employees, engages in an industry affecting interest commerce, and is an "employer" under the ADA.

    12.  Defendant NISSAN employs between 15 and 100 employees, engages in an industry affecting interest commerce, and is an "employer" under the ADA.

    13.  Defendants BUICK, CADILLAC, and NISSAN are alter-egos of each other.

    14.  Defendants BUICK, CADILLAC, and NISSAN constitute a single employer.

    15.  Defendants BUICK, CADILLAC, and NISSAN are joint employers.

## ADMINISTRATIVE PREREQUISITES

    16.  On or about September 22, 2005, plaintiff filed a charge ("Charge") with the Equal Employment Opportunity Commission ("EEOC") charging the defendant with discriminating against the plaintiff on the basis of plaintiff's disability, perceived disability, and his record of a disability.

    17.  Said charge was filed within 300 days of the unlawful and discriminatory employment practice.

18. On or about April 19, 2006, the EEOC made a finding that there is sufficient evidence to prove that the plaintiff was terminated due to his disability and in retaliation for his opposition to unlawful employment practices.

19. On or about April 19, 2006, the EEOC mailed a Notice of Right to Sue Letter to the plaintiff.

20. This federal lawsuit was commenced within 90 days of plaintiff's receipt of a right to sue letter.

## COUNT I

21. Plaintiff repeats, realleges, and incorporates, as though fully set forth herein, all factual allegations previously set forth.

22. Plaintiff began working for defendants as a Service Director in March 2000.

23. Defendants paid plaintiff through Premium Nissan, Ltd. However, during the time that plaintiff worked for defendants, he also had monthly meetings at Premium Cadillac, Ltd. During these monthly meetings, the GM's of all Premium Stores were present and matters were discussed pertaining to all defendants' profits and losses.

24. In addition, all the defendants shared the same Comptroller.

25. In addition, all defendants routinely swapped employees by having technicians, advisors, drivers, and prep people who were paid by one defendant perform services for another defendant.

26. In addition, all defendants share common ownership and a common address and phone numbers.

27. In addition, employees of all the defendants are generally managed by the same supervisors and all report, directly or indirectly, to Jon Ballin.

28. In addition, the employees of all defendants share in a common 401(k) and belong to the same union and have the same union representative.

29. In or about March 2001, plaintiff was promoted to Service and Parts Director. Plaintiff was given a raise in connection with this promotion.

30. In or about December 2004, plaintiff had a blocked

artery and underwent medical procedures including a stent and angioplasty. Due to his illness, plaintiff was out of work from December 17, 2004 through January 10, 2005.

       31. For the period from February 2, 2005 through April 29, 2005, plaintiff's medical condition required that he attend rehabilitation every morning. To attend rehabilitation, plaintiff was required to miss one hour of work each morning, which he made up by working through lunch.

       32. Due to his heart condition, plaintiff's employer regarded him as having an impairment that substantially limited the major life activity of working. Plaintiff's employer also viewed him as having a record of a disability.

       33. Plaintiff's immediate supervisor, General Manager Robert Goldberg, made derogatory comments about plaintiff's condition by stating, inter alia, "I'm going to give you your own stress test today," "What are you making a big deal of this for? Millions go through this every day," "Look at his face, it's beet red. He's ready to pop," "If it's too got, get out of the kitchen," "Maybe you can't handle the fucking job," "Look at all the pills you take".

       34. After plaintiff's rehabilitation ceased, he began receiving undeserved and false warnings from his employer.

       35. On or about July 18, 2005, plaintiff had a breakdown at work, and he was later diagnosed with Clinical Depression and Post-traumatic Stress Disorder. Plaintiff was prescribed medication in treatment of these diagnoses.

       36. On or about July 19, 2005, plaintiff's wife advised his employer of his condition because plaintiff could not maintain a conversation due to his heavy sedation. Plaintiff's wife told his employer that he could return in "possibly two weeks."

       37. On or about July 22, 2005, plaintiff's wife again called the principal of employer, John Balin, but he refused to speak with her, stating that she was "not an employee."

       38. In or about July 2005, the employer advertised plaintiff's job in the newspaper.

       39. In or about July 2005, the plaintiff furnished the employer with doctor's notes. Once again, the employer regarded the plaintiff as disabled from performing the major life activity of work, this time because of his mental condition and depression, and plaintiff had a record of disability.

       40. On or about July 28, 2005, plaintiff told Mr.

LAW OFFICE OF
RAYMOND NARDO

Goldberg that he was ready to return to work on August 1, 2005. Mr. Goldberg told plaintiff not to return to work and, thereafter, plaintiff was terminated.

41. Defendants terminated plaintiff because of his record of a disability and because they regarded plaintiff as disabled, in violation of the ADA, causing plaintiff economic and non-economic damages.

42. Defendants' termination of plaintiff was intentional, willful, and/or in reckless disregard of the ADA.

## COUNT II

43. Plaintiff repeats and reincorporates each and every factual allegation as though fully set forth herein.

44. This Court has supplemental jurisdiction over New York State claims according to 28 U.S.C. section 1367. Further, this Court may exercise original federal jurisdiction over these New York State claims pursuant to 36 U.S.C. section 300105.

45. Defendant BUICK has four or more employees and is an "employer" under the New York State Human Rights Law.

46. Defendant CADILLAC has four or more employees and is an "employer" under the New York State Human Rights Law.

47. Defendant NISSAN has four or more employees and is an "employer" under the New York State Human Rights Law.

48. Plaintiff's heart condition constitutes a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevent the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques.

49. Plaintiff's clinical depression constitutes a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevent the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques.

50. Plaintiff suffered a disabling impairment under the New York State Human Rights Law.

51. Plaintiff was perceived as suffering from a disability under the New York State Human Rights Law.

52. Plaintiff had a record of a disabling impairment under the New York State Human Rights Law.

53. Defendants intentionally and unlawfully terminated the plaintiff on the basis of his disability perceived disability age, which caused anxiety, mental anguish, pain and suffering, and loss of income, in violation of the New York State Human Rights Law.

### COUNT III

54. Plaintiff repeats, realleges, and reincorporates each and every factual allegation as though fully set forth herein.

55. On or about July 18, 2005, plaintiff was a full-time employee who worked more than 1,250 hours for the defendant during the prior year.

56. Defendant BUICK has 50 or more employees.

57. Defendant CADILLAC has 50 or more employees.

58. Defendant NISSAN has 50 or more employees.

59. Defendants are an alter ego, joint employer and/or single employer and have 50 or more employees.

60. On or about July 18, 2005, plaintiff commenced a leave under the FMLA because of his condition, which was a "serious health condition" as defined by the FMLA, and which made him unable to perform the functions of his position.

61. Pursuant to the FMLA, plaintiff was entitled to up to twelve weeks of family and medical leave during a twelve month period.

62. On or about July 28, 2005, defendants willfully violated the FMLA by terminating plaintiff's employment while plaintiff was absent on leave pursuant to the FMLA.

63. Pursuant to the FMLA, plaintiff was entitled to reinstatement in the same or an equivalent position with the same level of benefits and pay upon the expiration of his leave.

64. Defendants willfully, unlawfully, and intentionally terminated plaintiff and denied plaintiff resinstatement in the same or an equivalent position with the same level of benefits and pay upon the expiration of her leave, in violation of the FMLA.

65. Plaintiff seeks remedies, including backpay, compensatory and punitive damages, for Defendants' unlawful termination of plaintiff and refusal to reinstate plaintiff in violation of the FMLA.

## JURY DEMAND

66. The plaintiff demands trial by jury.

WHEREFORE, the plaintiff demands judgment against the defendant and prays:

(a) That this court award the plaintiff backpay, frontpay, lost health insurance, life insurance, pension, and deferred compensation benefits, retirement benefits, stock options, vacation, personal, sick and accrued leave, which amounts are to be determined at trial, as well as pre-judgment interest, compensatory damages and punitive damages for defendant's willful unlawful termination of the plaintiff, in violation of the ADA;

(b) That this court award the plaintiff backpay, frontpay, lost health insurance, life insurance, pension and deferred compensation benefits, retirement benefits, stock options, vacation, personal, sick and accrued leave, which amounts are to be determined at trial, as well as pre-judgment interest, and compensatory damages for defendant's willful unlawful termination of the plaintiff on the basis of his disability, in violation of the New York State Human Rights Law;

(c) That this court award the plaintiff backpay, lost health insurance, life insurance, pension and deferred compensation benefits, and accrued leave, which amounts are to be determined at trial, as well as pre-judgment interest, and compensatory damages and punitive damages for defendants' intentional and unlawful termination of the plaintiff in violation of the Family Medical Leave Act;

(d) That this court reinstate the plaintiff to his former position or a substantially similar one and enjoin the defendant from further discriminating against the plaintiff on the basis of his disability;

(e) That this court award the plaintiff counsel fees, disbursements, and costs pursuant to the ADA and FMLA;

(f) That this court award the plaintiff such other and further relief as may be just and equitable.

LAW OFFICE OF
RAYMOND NARDO

Dated:    Mineola, NY
          June 15, 2006

Yours, etc.,

Raymond Nardo (4773)
Attorney for
Plaintiff
129 Third Street
Mineola, NY 11501
(516) 248-2121